IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2009

## JAMES MILLER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Gibson County**
**No. H 7665     Clayburn L. Peeples, Judge**

**No. W2008-00746-CCA-R3-PC   -   Filed September 22, 2009**

The petitioner, James Leon Miller (hereinafter "the petitioner"), was convicted by a jury of criminal responsibility for first degree murder and criminal responsibility for aggravated assault. He now appeals the denial of post-conviction relief, claiming "the trial court erred in finding that the trial court counsel effectively assisted and represented the [petitioner]." Upon our review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Barbara Hobock (on appeal) and Cynthia Chandler-Snell (on appeal and at hearing) Humboldt, Tennessee, for the petitioner, James Miller.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Garry G. Brown, District Attorney General; and Larry Hardister, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

**Facts**. The facts of the underlying convictions, as outlined by this court in the petitioner's direct appeal, are described as follows:

> On May 15, 2004, the victim, Charles Lawuary, was shot and killed in Humboldt, Tennessee in an area known as "the crossing." A bystander was grazed by a bullet. The defendant, James L. Miller, and a co-defendant, Charles Lewis, were later arrested for the shootings. . . .
>
> Charles Lewis . . . admitted shooting the murder victim on May 15. He made a deal with the State to plead guilty to second degree murder and in exchange would testify at the defendant's trial. Around May 4, Charles Lawuary came up to Lewis and asked Lewis if Lewis and the defendant were talking about robbing him for his money.

Lewis called the defendant, who was on his way back from Jackson. The defendant subsequently called [Lawuary] and proceeded to argue with him on the phone. Lewis and the defendant then proceeded to the defendant's girlfriend's house. Lawuary shot at the defendant and the co-defendant while they were at the defendant's girlfriend's house. Lawuary fired four or five times, and the defendant fired back with a .45 caliber weapon. The defendant claimed he accidentally shot his girlfriend's car during this altercation. Lewis and the defendant decided that if they ever saw Lawuary again there were "going to get him."

On May 4, 2004, Sergeant Dennis Wright, who is in the Criminal Investigation Division of the Humboldt Police Department, received a report of a shooting incident. The defendant reported the May 4 incident. In the May 4 shooting investigation, the defendant reported to Sergeant Wright that a man wearing a bandana around his face walked up to the house where he was and began shooting. The defendant indicated to Sergeant Wright that Charles Lawuary was the shooter on May 4. Sergeant Wright found bullet holes in a vehicle in front of the house. Sergeant Wright found it unusual that the entrances of these bullet holes were from a southernly direction, but the shooter would have been shooting from a northerly direction. He found one spent .45 caliber shell casing in the vehicle. There were no other bullet holes or spent shell casings found in the investigation.

About one or two weeks later Lewis saw Lawuary. Lewis was riding in a car with Charles Davis and Lawuary was riding in a car with Chris Lofton, also known as "Gorilla". They stopped the cars so that they could speak to each other. After Lewis saw Lawuary riding with Lofton, Lewis told the defendant, also known as Red, that he had seen Lawuary. Lewis told the defendant about Lawuary because Lawuary was "still running around Humboldt like-like he ain't done nothing to nobody." Lewis then met up with the defendant near a barber shop. The defendant handed Lewis a .45 caliber gun in a brown paper bag. Lewis saw the car in which Lawuary was riding.

When the car stopped Lawuary got out of the car and walked toward the store. At this point, Lewis began walking toward the store while carrying the .45 caliber weapon he had received from the defendant. Lewis stated at trial that when the defendant gave him the gun, he and the defendant had planned to kill Lawuary. Lewis stood outside the store between two cars. He saw Roy Turner and informed him he was about to shoot Lawuary. When Lawuary came out of the store, Lewis waited a few minutes and began shooting him. Lewis did not believe that Lawuary had any idea that Lewis was at the scene or about to shoot him.

The victim did not put up any resistance or shoot back. After he shot Lawuary, Lewis began to run. He met a police car and ran in the opposite direction. Lewis ran to a friend's house, where the defendant joined him and retrieved his gun.

Carl Wade, Jr., was at "the crossing" on May 15 standing in front of Joe's Pool Room talking to his cousin. He heard three shots, then realized that he had been shot. There was no argument or disturbance before the shooting. Mr. Wade required six

stitches to his head and was released. Fortunately, he did not have any residual problems related to the injury.

Anthony McKnight was at his mother-in-law's house on May 15. He knew the defendant enough to recognize him. When he left the house, he saw the defendant coming out of a house talking on a cell phone and sticking a brown paper bag into the waistband of his pants. The object in the bag was black and had a handle. Mr. McKnight thought it looked like a gun. Mr. McKnight overheard the defendant talking on the cell phone and telling the person on the other end of the line, "Do what you've got to do."

Claude Thomas was at the barber shop near the crossing on May 15. Mr. Thomas and Gorilla, who is Mr. Lofton, were waiting for haircuts at the barbershop. Mr. Thomas and Gorilla were standing outside smoking and the defendant came over and talked to Gorilla. The defendant told Gorilla to, "keep that guy out of your car." Mr. Thomas then heard shots. Then he heard the defendant say, "There's the guy laying on the ground now." Thomas saw a police car and went over to see what had happened.

Roy Turner was a witness to the May 15 shooting. Mr. Turner was going to the store when he saw the co-defendant Charles Lewis, also known as "Smokey", cross the railroad track. When Lewis approached Mr. Turner he told him to get out of the way because he was going to shoot Lawuary. When Lawuary came out of the store, the co-defendant started shooting him. Lawuary never flinched, looked back or attempted to run. Lewis fired five shot[s] striking Lawuary in the head. Then Lewis ran, but had to turn around when he was approached by the police. Mr. Turner did not see the defendant at "the crossing" that day.

Mr. Pledge is the defendant's nephew and lives in Iowa. A few days after the May 15 shooting, the defendant went to Iowa. The defendant was in the area about two weeks until he was arrested at a hotel in Illinois. When Mr. Pledge went to pick up his uncle, he saw that the defendant had a .45 caliber gun in his possession. While riding in the car, the defendant told Mr. Pledge not to stop the car if the police arrived because the defendant was "on the run ." Mr. Pledge was also told that the defendant was supposed to be up on a murder charge.

On May 15, 2004, Sergeant Wright investigated the shooting death of Lawuary. The victim died from a gunshot wound to the head. Sergeant Wright completed an investigation of the area of the shooting known as "the crossing." He described street names as well as business names on a diagram of the area of the shooting. Sergeant Wright found four spent .45 caliber shell casings near the body of the victim. There was no evidence of any return fire by the victim. Sergeant Wright also found an additional victim who had been standing outside of a business near where the victim was shot. Sergeant Wright believed that a bullet ricocheted off the wall of the building and struck Carl Wade, the other victim, in the back of the head. This bullet caused a

grazing injury. Sergeant Wright recovered a bullet from Lawuary's head that was taken out during surgery at the hospital.

At the time of the May 15 shooting, an Officer Brad York of the Humboldt Police Department was looking for Charles Lawuary. He received a call from a female that the individual involved in the shooting on May 4 was in a trailer on Calhoun Street. Officer York did not find the individual. Officer York heard shots from the direction of "the crossing" and he ran there. York called in that there was a man lying on the street. Officer York saw a black male subject running away from the scene. A police car headed toward the subject, and Officer York saw the subject remove a gun from his waistband and point it toward the police car. The subject then turned and began running again.

Bill Baker is the Assistant Chief of Police at Humboldt. He transported a bullet removed from Lawuary's head and a bullet removed from the car involved in the May 4 shooting to the Tennessee Bureau of Investigation Crime Lab. Steve Scott of the TBI tested the bullets and concluded that they were both fired by the same gun.

After the May 15 shooting, Sergeant Wright found the defendant in Iowa after hearing several reports that he had left the state. The defendant was arrested in Rock Island, either Illinois or Iowa. The defendant's arrest and the return to Tennessee occurred within about a month of the shooting.

State v. James Leon Miller, No. W2005-01571-CCA-R3-CD, 2006 WL 962733, at ** 1-3 (Tenn. Crim. App., at Jackson, April 12, 2006) per. app. denied, (Tenn. Aug. 28, 2006).

The jury convicted the petitioner of criminal responsibility for first degree murder and criminal responsibility for aggravated assault. He was sentenced to life imprisonment for first degree murder. The petitioner also received a six-year sentence for aggravated assault to be served concurrently with the life sentence. His direct appeal was affirmed by this court, and the Tennessee Supreme Court denied his application for permission to appeal. Id.

On April 12, 2006, the petitioner filed a pro se petition for post-conviction relief. The petitioner was appointed counsel, and an amended petition for post-conviction relief was filed on November 29, 2007. Following a hearing, the post-conviction court denied the petition for post-conviction relief. The petitioner then filed a timely notice of appeal.[1]

**Post-Conviction Hearing**. Trial counsel testified that he met with the petitioner approximately five times in preparation for trial. Counsel informed the petitioner that the district attorney offered him a plea agreement for a sentence of thirty years. Counsel testified that he did not advise the petitioner whether to accept the plea agreement, but he supported the petitioner's decision to reject it after the petitioner insisted he was innocent. Counsel also testified that the petitioner never

---

[1] After the petitioner submitted his brief to this court, the State filed a motion to dismiss because the record did not include the written order denying post-conviction relief. This motion was denied after the petitioner supplemented the record with the order.

stated that he was outside of the barber shop with Christopher Lofton prior to the shooting. The petitioner told counsel that he was north of that area "on top of the hill." Through discovery, counsel was also provided Lofton's statement that he had given to the police. Based on the statement, counsel determined that Lofton's testimony would be detrimental to his client. Counsel never spoke with Lofton and did not know where he could be located. Regardless, counsel testified that the petitioner's convictions were based on his actions before and after the shooting; therefore, the petitioner's exact location at the time of the shooting was not relevant.

Counsel testified that he questioned Lewis at trial about his plea agreement for second degree murder. He recalled that Lewis stated he received the plea agreement in exchange for testifying against the petitioner. Counsel also asked Lewis the length of his plea agreement but Lewis was unsure of its duration. Counsel explained that he did not think Lewis actually entered the plea agreement until after the petitioner's trial. Counsel also testified that he discussed Lewis' plea agreement with the petitioner.

Counsel acknowledged that he did not object at trial to the jury instruction about criminal responsibility. He argued on appeal that the instruction was improper because it did not adequately express the requirements of the natural and probable consequences rule. Counsel read this court's opinion upholding the petitioner's convictions during the hearing. He did not file an appeal with the Tennessee Supreme Court, and wrote a letter to the petitioner terminating his representation with an attached copy of this court's opinion. Counsel acknowledged that he did not file a motion to withdraw as required by Rule 14 of the Tennessee Rules of the Supreme Court.

The petitioner testified that when the shooting occurred, he was outside of the barber shop with Lofton and Claude Thomas. The petitioner told counsel that Lofton might have information about his case. The petitioner stated that Lofton's testimony would have shown that the petitioner was not in the vicinity of the shooting, and that the petitioner did not instruct or encourage Lewis to kill the victim prior to the shooting. The petitioner acknowledged that Thomas testified that the petitioner and Lofton were standing outside of the barbershop when the shooting occurred. The petitioner was aware that the State had subpoenaed Lofton to testify at trial.

The petitioner testified that he did not know the substance of Lewis' plea agreement with the district attorney. He stated that the jury was not adequately informed of Lewis' plea agreement. The petitioner further stated that he depended on counsel to raise issues on appeal, and counsel did not discuss with him the possibility of an appeal to the Tennessee Supreme Court.

**Standard of Review**. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). Our supreme court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed

> question of law or fact such as a claim of ineffective assistance of counsel, is <u>de novo</u> with no presumption of correctness.

<u>Vaughn v. State</u>, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotations and citations omitted). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. <u>Id.</u>, <u>see also</u> T.C.A. § 40-30-110(f) (2006). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. <u>Hicks v. State</u>, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

<u>Vaughn</u> further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to 'reasonably effective' assistance, that is, within the range of competence demanded of attorneys in criminal cases.

<u>Vaughn</u>, 202 S.W.3d at 116 (internal citation and quotation omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. <u>Id.</u> (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984) and <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim[, and] a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." <u>Goad v. State</u>, 938 S.W.2d 363, 370 (Tenn. 1996).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below an objective standard of "reasonableness under prevailing professional norms." <u>Id.</u> (citing <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068).

**I. Ineffective Assistance of Counsel**. The petitioner claims the post-conviction court erred in denying his petition for post-conviction relief. He argues that counsel failed to: (1) investigate or pursue the testimony of Christopher Lofton; (2) object to the jury instruction regarding criminal responsibility and natural and probable consequences; (3) inform the jury about the length of Charles Lewis' sentence under his plea agreement; (4) advise the petitioner whether to accept his plea agreement; and (5) withdraw in compliance with Rule 14 of the Tennessee Rules of the Supreme Court.

First, the petitioner contends that the post-conviction court erred in denying his petition for post-conviction because counsel did not investigate or pursue the testimony of witness, Christopher Lofton. The petitioner claims that Lofton would have testified that the petitioner, Lofton, and Thomas were standing outside of the barber shop when the shooting occurred. He argues that Lofton's testimony would have shown that the petitioner did not instruct or encourage Lewis to kill the victim prior to the shooting. The petitioner also claims Lofton would have rebutted the damaging testimony of Thomas. Relying on Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990), the State argues that the petitioner cannot prove deficient performance or prejudice because Lofton was not presented at the post-conviction hearing. The State also stresses that counsel did not contact Lofton because counsel determined that Lofton's testimony would be detrimental to his client. We agree with the State.

Here, the petitioner claims that counsel was ineffective by failing to pursue or investigate a witness. Although the petitioner testified at the hearing to Christopher Lofton's purported testimony, the petitioner failed to produce Christopher Lofton to testify at the post-conviction hearing. It is well settled that

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id. In addition, the record shows that counsel chose not to contact Lofton because his statement did not corroborate the petitioner's claim that he was at the barber shop before the shooting. Instead, Lofton's statement revealed that he did not see the petitioner until after he heard gunshots and that the petitioner was upset with the victim because he would not sell the petitioner drugs. Moreover, the statement corroborated Lewis' testimony that the victim and the petitioner exchanged gunfire on May 4. The post-conviction court also commented that "had trial counsel been able to secure [Lofton's] presence he would [have] done [the petitioner] more harm than good." Accordingly, the record does not preponderate against the findings of the post-conviction court. The petitioner is not entitled to relief because he has failed to show deficient performance or prejudice as a result.

Second, the petitioner contends the post-conviction court erred because counsel did not object to the jury instruction concerning the natural and probable consequences rule. In the petitioner's brief, he argues the jury instruction was inadequate because it did not include "a second paragraph regarding Criminal Responsibility and the 'natural and probable consequences.'" Based on testimony from the post-conviction hearing, the petitioner presumably was referring to the final paragraph of Tennessee Criminal Pattern Jury Instruction 3.01, which states, "Before you find the defendant(s) guilty of being criminally responsible for said offense(s) committed by the conduct of another, you must find that all the essential elements of said offense(s) have been proven by the state beyond a

reasonable doubt." The petitioner claims he was prejudiced by this omission because criminal responsibility was a key issue in the case. In response, the State argues the petitioner cannot show deficient performance or prejudice because this court already determined the jury instruction was proper on direct appeal. We agree with the State.

In the petitioner's direct appeal, this court held that the trial court's instruction "did indeed instruct the jury on the natural and probable consequences rule." James Leon Miller, 2006 WL 962733, at *5. The jury instruction stated that the natural and probable consequences rule requires "that the elements of the other offense or offenses that accompanied the original offense have been proven beyond a reasonable doubt." This instruction is substantively no different than the final paragraph of Tennessee Criminal Pattern Jury Instruction 3.01. This issue is waived because it has been previously determined by this court on direct appeal. Accordingly, the petitioner is not entitled to relief.

Third, the petitioner contends the post-conviction court erred because counsel did not inform the jury about the length of Lewis' sentence under his plea agreement. The petitioner argues the jury would have been influenced by hearing that the actual shooter received a sentence of thirty years, and not a life sentence. The State argues that counsel adequately questioned Lewis about his plea agreement.

Contrary to the petitioner's argument, the record shows the following exchange between counsel and Lewis occurred at trial:

COUNSEL: So you were aware of the consequences [of the statement]. It could be death for you. But then you go to the State and you say, hey, I'm going to cooperate. Give me less time. Right?

LEWIS: Yes.

COUNSEL: And they gave you less time. 30 years. Right?

LEWIS: Yes.
COUNSEL: So you know no matter what you say you're going to get 30 years. Right?

LEWIS: Basically.

Counsel questioned Lewis regarding the length of his sentence on three separate occasions during cross-examination. Accordingly, the post-conviction court properly determined the petitioner was not entitled to relief on this issue.

The petitioner's remaining claims of ineffective assistance of counsel were not included in the pro se petition or the amended petitions for post-conviction relief; and therefore, they are waived. Cone v. State, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995); see also Jermaine Jordan v. State, No. M2008-00623-CCA-R3-PC, 2009 WL 1272277, at *4 (Tenn. Crim. App., at Nashville, May 6,

2009); <u>Jerome Dance v. State</u>, No. W2008-00692-CCA-R3-PC, 2009 WL 2486172, at *5 (Tenn. Crim. App., at Jackson, Aug. 12, 2009). Accordingly, the petitioner is not entitled to relief.

   **Conclusion.** Based on the review of the record and the briefs submitted by the parties, we conclude that the post-conviction court properly denied relief in this case.

                    _____

                    CAMILLE R. McMULLEN, JUDGE